IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| AFFIDAVIT IN SUPPORT OF APPLICATION FOR CRIMINAL COMPLAINT | Case No.  4:23-mj-446 <br><br>**[FILED UNDER SEAL]** |

I, Luke Eblen, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I am employed as a Senior Police Officer with the Des Moines, Iowa Police Department and have been so employed since 2015. I am currently assigned as an investigator in the Vice/Narcotics Control Section and have been so assigned since July of 2021. During this time, I have conducted and assisted with multiple narcotics investigations and search warrants. I have completed a twenty-three-week training academy at the Des Moines Police Department's Regional Academy and have received annual in-service training on legal updates and drug trends. I have been a member of the Metro STAR tactical team since November 2020 and have assisted in executing several search warrants for Des Moines Police Department Vice/Narcotics Control Section (DMPD-NCS) and other law enforcement agencies.

2. While on patrol, I conducted and assisted with hundreds of drug cases within the City of Des Moines. In connection with my duties and responsibilities as a local certified police officer, I have testified in judicial proceedings and prosecutions for multiple criminal code violations: including drug trafficking and firearms offenses. During my law enforcement career, I have participated in numerous investigations involving the unlawful distribution of narcotics, as well as illegal firearms activity,



4:23-mj-446

in violation of federal and state laws, which have led to arrests, convictions of violators, and seizures of narcotics and firearms and proceeds gained from illegal activity. In the course of my duties, I have conducted or participated in physical and electronic surveillance, undercover transactions, the execution of search warrants, debriefing of informants, interviews of witnesses, reviews of tape-recorded conversations involving drug trafficking activities, and other records kept by or related to drug traffickers and illegal firearms activity.

3. I have also attended the following educational courses/training seminars:

- Reid Interview and Interrogation Techniques (24 hours);
- Physical Surveillance for Counter Narcotic Investigations (40 hours);
- Patrol Rifle School (64 hours);
- Undercover Techniques and Survival for Narcotics Officers (40 hours);
- Basic SWAT Operators Course (40 hours);
- Clandestine Laboratory (40 hours);
- Development, Management, and Control of Drug Informants (24 hours);
- Iowa Narcotics Officers Association Annual Conference (2022 & 2023) (48 hours).

4. Based on my training and experience as a police officer and more specifically as a narcotics investigator, I have the requisite expertise to identify a host of controlled substances to include: cocaine, cocaine base "crack," ecstasy (MDMA), heroin, fentanyl, methamphetamine, marijuana and its derivatives, synthetic cannabinoids, and synthetic cathinones. I am further familiar with the manner in which individuals will market, sell, and deliver controlled substances, simulated

2

4:23-mj-446

controlled substances, and imitation controlled substances. I am intimately familiar with the *modus operandi* of those who market, sell, and deliver controlled substances, simulated controlled substances, and imitation controlled substances.

5. During the course of these investigations, I have spoken on multiple occasions with confidential sources, suspects, and experienced narcotics investigators concerning the methods and practices utilized by drug traffickers.

6. I have personally participated in the investigation NAVAEH SIMONE BOTTS. I have also spoken with other agents and officers involved in the investigation and reviewed reports. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other law enforcement officers and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and does not set forth all of my knowledge about this matter.

7. Based on the facts set forth in this affidavit, there is probable cause to believe that BOTTS has committed a violation of Title 21, United States Code, Section 841(a)(1) and 841(b)(1)(C) (distribution of a controlled substance).

## PROBABLE CAUSE

8. On May 26, 2023, I utilized an undercover (UC) police officer to make a "controlled purchase" (meaning under the direct supervision of law enforcement) to purchase a quantity of "M 30" pills (that I know routinely contain fentanyl) from NAVAEH SIMONE BOTTS. The UC made prior arrangements for the controlled purchase with BOTTS by contacting a known telephone number utilized by BOTTS.

9. At approximately 9:00 a.m., I met with the UC and gave the UC a quantity of U.S. currency and instructed the UC to use the money to purchase the "M 30" pills from BOTTS. Prior to the controlled transaction, BOTTS informed the UC this would take place at a location within the 3500 block of East Douglas Avenue in Des Moines. The UC was equipped with an audio and video recording device to capture this transaction.

10. At approximately 9:30 a.m. Investigator Noble observed the UC arrive in the area of the controlled purchase. At or about 9:31 a.m. via the audio and video recording device I observed the UC make a telephone call to BOTTS.

11. The UC informed BOTTS she was nearby, and BOTTS provided directions on how to get to her building and said it is "building F." BOTTS said, "You going to come inside...I got my baby." After this telephone call ended, and while the UC was waiting, BOTTS sent a text message saying she would come out and just meet at the door.

12. At approximately 9:38 a.m. Investigator Steinkamp observed the UC arrive in the parking lot of the buy location just outside building F. While outside the building waiting, at or about 9:43 a.m. the UC was in communication with BOTTS via text about her arrival and what vehicle she was in.

13. At approximately 9:47 a.m. the UC was instructed by BOTTS to come to the door, and Investigator Steinkamp observed the UC approach the southwest common entrance doorway on foot. While I was monitoring the audio and video recording device, I observed the UC meeting with a black female wearing a pink hair

bonnet, a white t shirt, and shorts. The UC later identified this female as BOTTS. I observed BOTTS have in her hand loose pills that were blue in color.

14. The female commented to the UC about the price of pills increasing due to the strength and quality of them. The UC gave the female the predetermined amount of U.S. currency for the pills and in return obtained the quantity of pills the female handed her.

15. Investigator Steinkamp observed the UC exit the same doorway he/she entered and returned to the vehicle in the parking lot at approximately 9:47 a.m. and travel away from the area. Sergeant Hedlund and I followed the UC from the buy location area back to a predetermined meeting spot. At that time, I observed 12 blue in color "M30" pills in the cupholder of the UC vehicle. These pills were placed in an evidence bag and secured. I then debriefed the UC. According to the UC, BOTTS gave directions to building F, and once there, to enter the doorway. The UC explained the southwest side of building F doorway was used. The UC said upon entering, BOTTS was squatting on the ground and made a comment about the security cameras.

16. The UC said BOTTS was holding onto loose pills in her hand and gave BOTTS the U.S. currency in exchange for the pills. The UC said BOTTS made a comment about the price going up because of the strength and quality being good. The UC said following this he/she left and explained he/she was given these pills loose and did not want to hold onto them while traveling so it was secured as best as possible in the cupholder.

4:23-mj-446

17. The UC was shown a known photograph of BOTTS and confirmed this was the person he/she purchased "M 30" pills from. The UC described BOTTS as wearing a pink bonnet in her hair, a white shirt, shorts, and slides during this transaction.

18. I reviewed the audio and recording device's footage which captured this incident and confirmed the transaction took place as described by the UC. I transported the "M 30" pills to the DMPD-VCNU Office and secured them in an evidence locker.

19. I know "M 30" pills pharmaceutically identify or resemble Oxycodone Hydrochloride. Oxycodone is classified as an Opioid. However, I know through my training and experience these types of pills are commonly counterfeit, meaning they are replicated and laced with fentanyl. Furthermore, I also know these "M 30" pills routinely cause the user to overdose and, in some instances, results in death.

## CONCLUSION

20. Based on the facts contained in this affidavit, there is probable cause to believe that NAVAEH SIMONE BOTTS has committed a violation of Title 21, United States Code, Section 841(a)(1) and 841(b)(1)(C) (distribution of a controlled substance).

I further state and declare that all of the statements and information contained herein are true and correct to the best of my knowledge, information and belief.

_____
Luke Eblen, Narcotics Investigator
Des Moines Police Department

Subscribed and sworn to before me this 30th day of June.

_____
The Honorable William P. Kelly
United States Magistrate Judge